RECEIVED
SDNY PRO SE OFFICE
2026 NOV 20 PM 12:57

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

LEWIS LANSIQUOT,

Plaintiff,

— against —

BROWN HARRIS STEVENS RESIDENTIAL MANAGEMENT, LLC, and STEVE KUKAJ,

Defendants.

Case No. 1:26-cv-08024-LLS

Hon. Louis L. Stanton

# FIRST AMENDED COMPLAINT

**JURY TRIAL DEMANDED**

## I. PRELIMINARY STATEMENT

Plaintiff Lewis Lansiquot, proceeding Pro Se, brings this action against his former employer, Brown Harris Stevens Residential Management, LLC ("BHS"), and Property Manager Steve Kukaj ("Kukaj") (collectively, "Defendants"), for unlawful interference and retaliation under the Family and Medical Leave Act of 1993 (FMLA, 29 U.S.C. Section 2601 et seq.), unpaid overtime and retaliation under the Fair Labor Standards Act (FLSA, 29 U.S.C. Section 201 et seq.), willful wage theft and unlawful withholding of earned vacation wages under the New York Labor Law (NYLL Sections 191, 193, 198), caregiver and associational disability retaliation under the New York State Human Rights Law (NYSHRL, N.Y. Exec. Law Section 296) and New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code Section 8-107), and intentional/reckless infliction of severe emotional and physical bodily harm under New York common law.

Following twenty-one (21) years of dedicated, unblemished service at The Galleria (117 East 57th Street, New York, NY), Defendants subjected Plaintiff to a calculated, bad-faith campaign of retaliation, industrial blacklisting, deceptive investigation tactics, and wage extortion after Plaintiff exercised protected FMLA caregiver leave for his seriously ill mother and reported internal payroll manipulation and managerial harassment to Corporate Human Resources.

## II. JURISDICTION AND VENUE

This Court has original Federal Question Jurisdiction pursuant to 28 U.S.C. Section 1331 because Plaintiff's First and Second Causes of Action arise directly under federal statutes—specifically the FMLA (29 U.S.C. Section 2615) and the FLSA (29 U.S.C. Sections 207, 215(a)(3)).

This Court has Supplemental Jurisdiction pursuant to 28 U.S.C. Section 1367(a) over Plaintiff's New York State and New York City statutory and common-law claims (Third through Fifth Causes of Action), as they arise out of the exact same nucleus of operative facts.

Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Section 1391(b) because Defendants reside, transact business, and committed the unlawful acts alleged herein within New York County, New York.

## III. PARTIES

Plaintiff Lewis Lansiquot is a resident of Brooklyn, New York, who was employed continuously by Defendant BHS at The Galleria for approximately twenty-one (21) years until his unlawful removal and termination in 2026. At all relevant times, Plaintiff was an eligible employee covered by the FMLA, FLSA, NYLL, NYSHRL, and NYCHRL.

Defendant Brown Harris Stevens Residential Management, LLC ("BHS") is a domestic limited liability company authorized to do business in New York, with its principal executive offices in New York, New York, managing luxury residential properties including The Galleria (117 East 57th Street, New York, NY). At all relevant times, BHS employed fifty (50) or more employees within a 75-mile radius and was Plaintiff's employer within the meaning of the FMLA, FLSA, NYLL, NYSHRL, and NYCHRL.

Defendant Steve Kukaj ("Kukaj") was at all relevant times employed by BHS as the Property Manager overseeing The Galleria, possessing direct supervisory authority over Plaintiff's schedule, discipline, wages, and termination, and is sued in both his individual and official capacities.

## IV. STATEMENT OF FACTS

### A. Twenty-One Years of Unblemished Service and 2025 FMLA Retaliatory Threat

For twenty-one (21) years, Plaintiff served as a front-door attendant, concierge, elevator operator, and building staff member at The Galleria with an exemplary disciplinary record. As the Galleria Board President later confirmed on the record on October 26, 2026, building leadership had known Plaintiff for nineteen (19) years with zero prior issues.

In 2025, Plaintiff exercised his statutory right to take approved FMLA caregiver leave to care for his seriously ill, disabled mother.

Immediately upon Plaintiff's return from his 2025 FMLA leave, Defendant Kukaj confronted Plaintiff and explicitly threatened him, warning that Plaintiff would not be granted family leave in the following year (2026).

### B. Plaintiff's Escalation to Corporate HR Regarding Harassment and Payroll Manipulation

Following Kukaj's retaliatory threat and ongoing workplace harassment, Plaintiff escalated his complaints directly to BHS's Corporate Human Resources department, reporting both Kukaj's interference with his FMLA rights and internal payroll manipulation/unpaid overtime irregularities at the property.

Rather than protecting Plaintiff from retaliation, Defendants initiated a coordinated scheme to manufacture a pretext for Plaintiff's removal.

### C. The February 11, 2026 Ambush and Violation of Building Due Process

On February 11, 2026, Defendant Kukaj came down to the front desk and publicly accused Plaintiff of severe sexual harassment, claiming Plaintiff caused a former resident's assistant to leave the building.

Defendants violated every established building protocol and due-process standard. Even though two different employees named "Lewis" worked in the building (Plaintiff, age 61, and a younger coworker also named Louis, age 25), Defendants never called Plaintiff into the office to conduct an impartial factual review, never verified identity, and immediately removed Plaintiff from the work schedule the following day—placing him in indefinite limbo for

months and blacklisting him from comparable Midtown employment.

**D. Deceptive "Neutral" Investigation by Shawnell Barnett, Character Interviews, and Pre-Arbitration Settlement Ambush**

Following Plaintiff's removal, BHS Human Resources representative Lily sent written correspondence regarding an investigation into the matter, and Defendants retained outside attorney Shawnell Barnett ("Barnett").

Barnett interviewed Plaintiff while representing herself as an independent, neutral investigator conducting a fair review of the allegations. Barnett also went to The Galleria and interviewed Plaintiff's coworkers, Jorge Alvarado and Giovanni Yasno, specifically regarding Plaintiff's workplace character and conduct.

In truth, Barnett's investigation was a deceptive, one-sided sham. Rather than acting as a neutral fact-finder, Barnett appeared unexpectedly at Plaintiff's pre-arbitration meeting acting aggressively as corporate defense counsel for Brown Harris Stevens.

During that pre-arbitration session, while still concealing the resident's actual email, Barnett and Defendants tried to ambush Plaintiff into accepting a lowball ten (10) week severance buyout by continuing to falsely accuse Plaintiff of sexually harassing the resident's assistant and claiming that was the reason the assistant left. Plaintiff refused to be coerced into a lowball settlement under false pretenses.

**E. Eight-Month Concealment of Exculpatory Secondhand Email Naming Three Workers**

For nearly eight (8) months, Defendants left Plaintiff in indefinite limbo and falsely branded him a sexual harasser while deliberately suppressing the resident's original February 11, 2026 (1:37 PM) email to Kukaj.

When that suppressed February 11, 2026 email finally surfaced in October 2026, it completely exposed Defendants' bad-faith retaliation:

(a) The resident's email was not even based on firsthand observation, but merely repeated secondhand claims told to her by her assistant.

(b) Despite Kukaj claiming harassment began in December 2025, the resident never sent a single complaint or email during December 2025, January 2026, or early February 2026, while Plaintiff made routine deliveries to her

apartment almost daily without incident.

(c) The February 11, 2026 email explicitly named three (3) separate workers—Plaintiff, coworker Jorge Alvarado (who was off-shift on February 11 and whom Kukaj privately reassured had "nothing to worry about"), and coworker Giovanni—yet Defendant Kukaj singled out and targeted Plaintiff alone in retaliation for Plaintiff having reported Kukaj to Corporate HR.

**F. Collapse of Primary Pretext and Retroactive "Holiday Envelope" Excuse**

At the initial arbitration session on October 26, 2026, once the suppressed three-worker email came to light, Defendants dropped 100% of their primary sexual harassment allegations on the record because they could not substantiate them, the complaining assistant was not a witness, and the resident herself had already moved out of the building.

Desperate to justify their unlawful conduct after their sexual harassment pretext collapsed, Defendants pivoted to a fabricated, retroactive excuse—claiming they terminated a 21-year veteran employee over a polite passing conversation regarding a holiday envelope, even though the tenant herself had initiated that conversation in early January 2025 by asking Plaintiff whether he had received her envelope in accordance with standard building custom.

**G. Willful Withholding of Earned Vacation Wages and Coercive Release Attempt**

Following Plaintiff's unlawful removal, Defendants owed Plaintiff 160 hours (four full weeks) of earned, accrued vacation pay at his regular rate of $30.38 per hour ($4,860.80 gross), alongside unpaid overtime shortages.

Defendants initially attempted to hold Plaintiff's earned vacation wages hostage to coerce him into signing a general liability release waiving his legal claims. When Plaintiff refused to waive his rights, Defendants paid only 67 hours ($2,035.46 gross) and willfully withheld the remaining 93 hours ($2,825.34 gross) of earned vacation pay without legal justification.

### H. Severe Physical Cardiovascular Injury Caused by Defendants' Bad-Faith Conduct

Defendants' malicious eight-month smear campaign, false sexual harassment branding, retaliatory termination, sham neutral investigation, and wage extortion inflicted severe, documented physical trauma upon Plaintiff.

The acute psychological and physiological shock of Defendants' ambush triggered a hypertensive medical crisis requiring emergency hospital care and cardiology evaluation, resulting in a certified permanent -16% abnormal heart muscle strain injury—with ongoing cardiovascular stress requiring further Emergency Department treatment on November 15, 2026 (documenting Stage 2 hypertension of 155/104 mmHg and emergency administration of amlodipine).

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(FMLA Interference and Retaliation — 29 U.S.C. Section 2615 — Against All Defendants)**

Plaintiff repeats and realleges paragraphs 1 through 27 as if fully set forth herein.

Defendants interfered with, restrained, and retaliated against Plaintiff for exercising his protected FMLA caregiver leave in 2025 and seeking ongoing FMLA rights in 2026 by threatening him upon his return from leave, subjecting him to heightened scrutiny, and terminating his employment under a fabricated pretext.

Defendants' violations were willful and lacking in good faith, entitling Plaintiff to lost wages, benefits, front pay, 100% liquidated damages, and statutory attorney's fees and costs pursuant to 29 U.S.C. Section 2617.

### SECOND CAUSE OF ACTION

**(FLSA Unpaid Overtime and Retaliation — 29 U.S.C. Sections 207, 215(a)(3) — Against All Defendants)**

Plaintiff repeats and realleges paragraphs 1 through 30 as if fully set forth herein.

Defendants failed to pay Plaintiff proper statutory overtime wages for hours worked in excess of forty (40) per workweek and unlawfully discharged Plaintiff in retaliation for his internal complaints to Corporate HR regarding payroll manipulation and unpaid wages.

Plaintiff is entitled to unpaid overtime compensation, 100% liquidated damages, compensatory and punitive retaliation damages, and attorney's fees and costs pursuant to 29 U.S.C. Section 216(b).

**THIRD CAUSE OF ACTION**

**(Willful Wage Theft and Unlawful Withholding of Vacation Wages — NYLL Sections 191, 193, 198 — Against All Defendants)**

Plaintiff repeats and realleges paragraphs 1 through 33 as if fully set forth herein.

Defendants violated NYLL Sections 191 and 193 by unlawfully withholding 93 hours ($2,825.34 gross) of Plaintiff's 160 earned vacation hours, attempting to coerce a general release in exchange for earned wages, and failing to pay full overtime compensation.

Pursuant to NYLL Section 198(1-a), Plaintiff is entitled to recover the full unpaid wage balance, 100% statutory liquidated damages (double damages), prejudgment interest at 9% per annum, and mandatory reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION**

**(Caregiver and Associational Disability Retaliation and Aiding and Abetting — NYSHRL Section 296 and NYCHRL Section 8-107 — Against All Defendants)**

Plaintiff repeats and realleges paragraphs 1 through 36 as if fully set forth herein.

Defendants discriminated and retaliated against Plaintiff due to his caregiver status and association with his disabled mother, and retaliated against him for opposing unlawful workplace practices. Defendant Kukaj directly participated in and aided and abetted these violations.

Plaintiff is entitled to economic damages, emotional distress damages, punitive damages under the NYCHRL, and statutory attorney's fees and costs.

## FIFTH CAUSE OF ACTION

**(Intentional / Reckless Infliction of Emotional and Physical Harm — New York Common Law — Against All Defendants)**

Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

Defendants' extreme and outrageous conduct—falsely accusing a 21-year veteran employee of sexual harassment based on secondhand claims, suppressing an exculpatory three-worker email for eight months while blacklisting him, deploying a sham "neutral" investigator as corporate defense counsel to ambush him into a lowball 10-week severance offer, and extorting his earned vacation pay—exceeded all bounds of decency tolerated in a civilized community.

Defendants' conduct directly and proximately caused Plaintiff severe emotional anguish and permanent physical bodily injury, including a certified -16% abnormal heart muscle strain and acute hypertensive crises.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lewis Lansiquot respectfully requests that this Court enter judgment against Defendants Brown Harris Stevens Residential Management, LLC and Steve Kukaj, jointly and severally, awarding:

Compensatory economic damages for back pay, front pay, lost benefits, and seniority in an amount to be determined at trial, currently exceeding $40,000.00 and continuing to accrue;

Unpaid vacation wages ($2,825.34 for 93 withheld hours) and unpaid overtime wages under the FLSA and NYLL;

Statutory 100% liquidated damages under the FMLA, FLSA, and NYLL Section 198(1-a);

Compensatory damages for severe physical cardiovascular injury (certified -16% heart muscle strain) and emotional distress in an amount to be determined at trial;

Punitive damages under the NYCHRL, FLSA, and New York common law in an amount to be determined at trial, with total global damages believed to exceed $750,000.00 to $1,000,000.00;

Pre-judgment and post-judgment interest, reasonable attorney's fees, and costs of suit; and

Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York

November 20, 2026

Respectfully submitted,

LEWIS LANSIQUOT, Pro Se

465 Miller Avenue

Brooklyn, NY 11207

(917) 600-9792

**From:** EEOC <no-reply@service.eeoc.gov>

**Date:** June 18, 2026 at 6:49:35 PM EDT

**To:** "Mr. Lewis Lansiquot" <lewis.lansiquot1@gmail.com>

**Subject: Time-Sensitive EEOC Final Decision for EEOC Charge 520-2026-06354 / Decisión final urgente de la EEOC por el cargo 520-2026-06354**

**U.S. Equal Employment Opportunity Commission**

The Equal Employment Opportunity Commission (EEOC) has issued a final decision regarding EEOC Charge 520-2026-06354, which can be found in the document titled **DISMISSAL AND NOTICE OF RIGHTS** in the EEOC Public Portal. This email, as well as the DISMISSAL AND NOTICE OF RIGHTS, is official notice that the EEOC has dismissed the above-referenced EEOC charge and that the Charging Party has the right to sue the respondent(s) on this charge in court within 90 days of receipt of this notice. The DISMISSAL AND NOTICE OF RIGHTS also provides additional information related to filing suit under the laws enforced by the EEOC, including important time limits. Please note that the 90-day deadline for Charging Party to file a lawsuit is set by law and failure to file a lawsuit in that time may result in the inability to move forward with a lawsuit.

**You should log into the EEOC Public Portal, download and read the DISMISSAL AND NOTICE OF RIGHTS as soon as possible. You should also keep a record of the date you received this notice and save the downloaded DISMISSAL AND NOTICE OF RIGHTS.**

This email is an official notification from the Equal Employment Opportunity Commission (EEOC) regarding charge 520-2026-06354. Please do not reply to this email.

*Notice of Confidentiality: This email may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact (800) 669-4000 and destroy all copies of the original message and attachments.*

La Comisión para la Igualdad de Oportunidades de Empleo (EEOC, por sus siglas en inglés), ha emitido una decisión final con respecto al cargo de dicha Comisión 520-2026-06354, que se encuentra en el documento titulado **Desestimación y Notificación de Derechos** en el Portal Público de la EEOC. Este correo electrónico, así como la Desestimación y Notificación de Derechos, es un aviso oficial que indica que la EEOC ha desestimado el cargo mencionado anteriormente y que la parte acusadora tiene derecho a demandar a los responsables de este cargo en un tribunal en los 90 días posteriores a la recepción de este aviso. La Desestimación y Notificación de Derechos también proporciona